**UNITED STATES of America,**

v.

**JIE YING WANG, Defendant.**

No. 93–36–S.

United States District Court,
E.D. Virginia,
Norfolk Division.

April 8, 1993.

Nunc pro tunc April 5, 1993.

James A. Metcalfe, Asst. U.S. Atty., Norfolk, VA, for U.S.

Robert B. Rae, Virginia Beach, VA, for defendant.

## DETENTION ORDER

REBECCA BEACH SMITH, District Judge.

This matter came before the court for a preliminary examination to find probable cause, pursuant to Federal Rule of Criminal Procedure 5.1, and on the government's motion for the detention of defendant, pursuant to 18 U.S.C. § 3142(e) and (f). Defendant Jie Ying Wang was present in person at the hearing and was represented by counsel. The court FINDS probable cause to believe that defendant Wang has committed a violation of 18 U.S.C. § 401(3), criminal contempt of court, based on the evidence presented as set forth in the findings of fact below. Also, after a full hearing and argument of counsel, and having considered the factors set out in 18 U.S.C. § 3142(g), the court GRANTS the government's motion for detention and ORDERS defendant detained pending trial.

The court makes the following findings of fact and conclusions based upon the available information before the court at this time:

(1) Defendant Wang is a citizen of the People's Republic of China. She is a student at Old Dominion University. She appears to have no difficulty communicating in English; to the contrary, she seems to have considerable fluency in the language. A complaint currently charges defendant Wang with criminal contempt for violation of the court's Orders issued on October 7, 1992 and October 27, 1992, in breach of 18 U.S.C. § 401(3).

(2) On October 9, 1992, defendant Wang was personally served with a copy of the court's Order issued October 7, 1992. The Order was issued in a criminal case, No. CR.92–188–N, in which defendant's husband, Bin Wu,[1] is a defendant. The October 7, 1992 Order restrains the disposal of any of the assets of the defendants charged in case number CR.92–188–N. The Order specifically addresses family members of the defendants and all persons holding property for them.

(3) At a hearing in case number CR.92–188–N on October 23, 1992, the court extended the Order issued on October 7, 1992, with a few modifications. One modification allowed defendant Wang to withdraw $5,000 from the Nationsbank account numbered 8422–1627. Defendant Wang was present at the October 23, 1992 hearing. The court in fact specifically addressed her during the hearing.[2]

(4) On January 4, 1993, the court held another hearing in case number CR.92–188–N. At the hearing, defendant Wang's husband, Wu, argued his petition for the release of assets subject to restraint under the court's Orders of October 7, 1992 and October 27, 1992. The matter was discussed at some length, and defendant Wang was present at the January 4, 1993 hearing.

(5) In late January, 1993, in connection with a change of her address, defendant Wang contacted Nationsbank at a toll-free telephone number. In response to defendant Wang's statement that a government freeze applied to account number 8422–1627, a Nationsbank representative told her that no such freeze was in place. Defendant Wang subsequently withdrew some cash from the account via an automated teller machine (ATM) transaction. Shortly thereafter she told her husband, Bin Wu, that she could access the funds in Nationsbank account number 8422–1627. Her husband told defendant Wang to get the money out of the account quickly.

(6) On or about January 25, 1993, defendant Wang withdrew $45,000 from account number 8422–1627. With that money she

---

1. Defendant Wang apparently is now pursuing a divorce from Wu.

2. On October 27, 1992, the court issued a written Order memorializing the orders issued orally during the hearing on October 23, 1992. There is no evidence that defendant Wang received a copy of the written Order dated October 27, 1992.

obtained three (3) Nationsbank cashier's checks worth $15,000 each. After the withdrawal of the $45,000, approximately $10,000 remained on deposit in defendant Wang's name at Nationsbank.

(7) Within two days, defendant Wang opened accounts at Dominion, Crestar, and Signet banks. She deposited one of the three $15,000 Nationsbank cashier's checks into each of those new accounts.

(8) On or about March 3, 1993, defendant Wang closed her Signet Bank account and opened a Signet account in the name of her mother, Jian Yong Zhao. Defendant Wang moved the money from her closed Signet account into her mother's new account.

(9) On or about March 10 or 11, 1993, defendant Wang moved monies from her other accounts into her mother's Signet Bank account.

(10) On April 2, 1993, the court issued an arrest warrant for defendant Wang and a search warrant for her residence, as well as a seizure warrant pertaining to certain assets previously subject to the court's restraining orders. Special Agent Thomas A. Radermacher of the United States Customs Service executed the warrants that same day. Defendant Wang waived her *Miranda* rights, after being advised of them by Agent Radermacher. By her admissions, defendant Wang corroborated the information Agent Radermacher previously possessed about the financial transactions enumerated above. Defendant Wang told Agent Radermacher that she shifted the funds from account to account so that neither Bin Wu nor the United States would be able to locate the money.

(11) As of April 3, 1993, pursuant to the seizure warrants issued by the court, the government has seized, among other things, defendant Wang's mother's (Zhao's) Signet Bank account, which has a balance of approximately $40,000, and defendant Wang's Crestar Bank account, which has a balance of approximately $15,000.

(12) Defendant Wang's mother, Zhao, like Wang, is a citizen of the People's Republic of China. However, Zhao allegedly does not speak English. Defendant Wang had purchased for her mother an airline ticket on a flight scheduled to leave for China on April 10, 1993.

(13) Following Bin Wu's arrest in October, 1992, to secure the services of a private investigator to aid in her husband's defense, defendant Wang borrowed $5,000 from Yi Ran, a Chinese national living in the United States. Following her arrest, defendant Wang initially told Agent Radermacher that Yi Ran was a college student living in Montgomery, Alabama. She quickly changed her statement, however, asserting that Ran was a businessman based in New York.

Based on the foregoing findings of fact, the court FINDS that probable cause exists to believe that defendant Wang has violated the court's Orders of October 7, 1992, and October 27, 1992, in violation of 18 U.S.C. § 401(3).

Also based on the foregoing findings of fact, the court FINDS that no condition or combination of conditions will reasonably assure both the appearance of defendant Wang as required and the safety of the community. Specifically, the court FINDS by clear and convincing evidence a serious risk that defendant Wang will obstruct or attempt to obstruct justice. The assets subject to the court's Orders of October 7, 1992, and October 27, 1992 were restrained because ultimately they may be forfeitable to the United States. It appears that defendant Wang already has meddled with certain restrained assets, namely money. It appears that she has transferred the "lion's share" of those monies to her mother, a foreign national. It appears that defendant Wang has planned to put those assets beyond the reach of the government, arranging transport out of the country for the nominal "owner" of the assets, her mother, Zhao.

Moreover, the court FINDS by a preponderance of the evidence that defendant Wang poses a risk of flight. She is not an American citizen, but a Chinese citizen. The evidence indicates that she has engaged in a series of sophisticated transactions designed to secure her control over substantial assets perhaps ultimately forfeitable to the government. The evidence further indicates that defendant Wang has connections with Chi-

nese nationals in the United States who in the past have provided her with significant sums of money. Such connections and resources could easily facilitate defendant Wang's departure from the United States. Moreover, as she has purchased an airplane ticket for her mother, it appears that defendant Wang has flight on her mind.

The court accordingly GRANTS the government's motion to detain defendant Wang. The court ORDERS defendant detained pending her trial.[3] The court further ORDERS defendant committed to the custody of the Attorney General for confinement, pending her trial, in a corrections facility, separate to the extent practicable from persons awaiting or serving sentences or being held in custody pending appeal. The court RECOMMENDS that defendant continue to be confined at the Western Tidewater Regional Jail. The court further ORDERS that defendant be afforded reasonable opportunity for private consultation with counsel and that on order of a court of the United States or on request of an attorney for the government, defendant be made available for purposes of appearance in connection with any court proceeding.

It is so ORDERED.

---

3. This order assumes timely indictment by a grand jury. If defendant Wang is not so indicted, she shall be detained until such time as the grand jury declines to indict or the United States fails to present timely the charges to a grand jury.